IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DAVID GEVAS, ) | |
| ) | |
|     Plaintiff, ) | |
| ) | No. 08 C 3074 |
| v. ) | |
| ) | Judge Ronald A. Guzmán |
| MIKE BORKOWSKI, C/O ) | |
| HENDERSON, WEXFORD ) | |
| HEALTH SOURCES, INC., DR. ) | |
| PARTHA GHOSH and DR. ) | |
| EUARISTO AGUINALDO, ) | |
| ) | |
|     Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, who is in the custody of the Illinois Department of Corrections ("IDOC"), has sued Mike Borkowski, Oliver Henderson, Dr. Partha Ghosh, Dr. Euaristo Aguinaldo and Wexford Health Sources, Inc. pursuant to 42 U.S.C. § 1983 for their alleged violations of his Eighth Amendment rights.[1] Defendants Ghosh, Aguinaldo and Wexford have filed a Federal Rule of Civil Procedure ("Rule") 56 motion for summary judgment. For the reasons set forth below, the Court grants in part and denies in part the motion.

### Facts

In 2007, plaintiff was an inmate at the Stateville Correctional Center and the defendants held the following jobs there: Ghosh was the medical director, Aguinaldo was a staff doctor, Borkowski

---

[1] In his amended complaint, plaintiff also named Terry McCann, Melody J. Ford, Tammie Garcia, Dr. Jacqueline Mitchell, Roger W. Walker, Jr., Jane Doe and John Doe as defendants. On March 24, 2009, the Court dismissed all of these parties but the Does. Because plaintiff has never identified or served the Does, the Court hereby dismisses them.

was a medical technician, Henderson was a correctional officer and Wexford was the medical services vendor. (Pl.'s Resp. Defs.' LR 56.1(a) Stmt. ¶¶ 1-4; Pl.'s Stmt. Add'l Facts ¶¶ 17, 30; *id.*, Ex. 2, Gevas Aff. ¶ 32.)

In late 2006, plaintiff developed a fungal infection called Onychomycosis in his left thumb and right index finger and was given medication for it. (Pl.'s Stmt. Add'l Facts, Ex. 6, Clinite Aff., Ex. A at 2-3, 3/18/07 Infection Grievance.) He saw a doctor or physician assistant ("PA") on January 4, 2007, who prescribed a six-week course of the medication at an increased dose. (*Id.*; Defs.' LR 56.1(a) Stmt., Ex. 3, 1/4/07 Prescription Order.)

Sometime before March 15, 2007, plaintiff ran out of the medication. (Pl.'s Stmt. Add'l Facts, Ex. 2, Gevas Aff. ¶¶ 30-32.) He asked Borkowski for a refill, but Borkowski refused to give him one. (*Id.* ¶ 32.)

On March 15, 2007, plaintiff saw Aguinaldo. (Pl.'s Stmt. Add'l Facts ¶ 13.) Aguinaldo saw that plaintiff had nail fungus and knew that he had had it for several months, but refused to refill the medication. (*Id.* ¶¶ 30-31; *id.*, Ex. 6, Clinite Aff., Ex. A at 2-3, 3/18/2007 Infection Grievance; Defs.' LR 56.1(a) Stmt., Ex. 5, Aguinaldo Dep. at 13-15, 30-32.)

On March 18, and 25, 2007, plaintiff submitted emergency grievances seeking treatment for his fingers. (Pl.'s Stmt. Add'l Facts, Ex. 6, Clinite Aff., Ex. A at 2-3, 6-7, 3/18/07 & 3/25/07 Infection Grievances.) Ghosh did not consider the grievances to be emergencies and ordered that they be addressed through the ordinary process. (*Id.*)

On May 11, plaintiff filed another grievance seeking treatment for his fingers. (*Id.* at 8, 5/11/07 Infection Grievance.)

On May 31, 2007, the prison grievance officer denied plaintiff's grievances, saying:

> Per Medical Director, Dr. Ghosh: The writer reviewed the offender's medical records. He has been evaluated at by [sic] MD at HCU several times. He was seen by a particular health provider who did not prescribe medication based on his evaluation. He [sic] advised to contact CMT for MD sick call if he has recurrence of the old condition.

(*Id.* at 9, 5/31/07 Grievance Officer's Report.)

In July 2007, plaintiff was examined by a PA who prescribed a higher dose of the medication he previously took. (*Id.*, Ex. 1, Gevas Dep. at 87-88.) Shortly thereafter, plaintiff stopped taking the medication because it gave him headaches. (*Id.* at 87-89.) The PA ordered another medication for him, but Wexford refused to provide it because it was not in Wexford's formulary. (*Id.* at 88-89; *id.*, Ex. 5, Ghosh Dep. at 45-47); *see* http://www.healthsymphony.com/insurancedefinitions.htm (defining "formulary" as "[a] listing of pharmaceuticals [a] health plan pays for").

Around the time that plaintiff developed the fungal infection, he also started to have tooth pain. (Pl.'s Stmt. Add'l Facts ¶ 1.) On January 30, 2007, non-party dentist Dr. Selmer examined plaintiff, determined that the tooth had an abscess, prescribed Motrin and penicillin for him and recommended that the tooth be extracted at plaintiff's next dental visit. (*Id.* ¶¶ 2-4; Defs.' Resp. Pl.'s Resp. Defs.' LR 56.1(a) Stmt., Ex. 1, Dental Record.)[2]

---

[2]Because plaintiff's dental record does not state that his tooth had an abscess and he offers no testimony from Dr. Selmer, defendants argue that Dr. Selmer's alleged statement to that effect is inadmissible hearsay. Under the Federal Rules of Evidence, however, Dr. Selmer's statement constitutes an admission, which is admissible non-hearsay. *See* Fed. R. Evid. 801(d)(2) (defining as non-hearsay a statement that is offered against a party that was made by the party's agent concerning a matter within the scope of the agency); *Edwards v. Staniec*, No. 08-cv-352-bbc, 2009 WL 3046747, at *1 (W.D. Wis. Sept. 17, 2009) ("The medical providers are defendant's 'agents or servants' and their statements regarding plaintiff's medical care are non-hearsay under Fed. R. Civ. P. 801(d)(2) . . . .").

After plaintiff finished the medication, the abscess worsened. (Pl.'s Stmt. Add'l Facts, Ex. 2, Gevas Aff. ¶¶ 8-10.) From February 18, through March 11, 2007, plaintiff repeatedly asked Borkowksi for a follow-up appointment with the dentist. (*Id.* ¶ 10.) Borkowski refused his requests. (*Id.* ¶ 11.)

On March 11, 2007, plaintiff wrote a letter to Stateville's dental office requesting immediate dental treatment. (*Id.* ¶ 12.)

On March 18, and 25, 2007, plaintiff submitted emergency grievances seeking treatment for his tooth. (*Id.*, Ex. 6, Clinite Aff., Ex. A at 1, 4-5, 3/18/07 & 3/25/07 Dental Grievances.) Ghosh did not consider the grievances to be emergencies and thus, directed prison staff to use the ordinary grievance procedure to address them. (*Id.*)

Though it is not clear when the appointment was made or by whom, plaintiff was scheduled to see the dentist on March 28, 2007. (*Id.*, Ex. 2, Gevas Aff. ¶ 17.) He missed the appointment, however, because defendant Henderson would not let him out him of his cell. (*Id.* ¶ 18.) That day and the next, plaintiff wrote letters to the dental office requesting another appointment. (*Id.* ¶¶ 19-20.)

On May 11, 2007, plaintiff filed a non-emergency grievance seeking treatment for his tooth. (*Id.*, Ex. 6, Clinite Aff., Ex. A at 8, 5/11/07 Dental Grievance.)

On June 5, 2007, plaintiff's tooth was extracted. (*Id.*, Ex. 1, Gevas Dep. at 56.)

In March 2007, plaintiff was also examined by an ophthalmologist, who prescribed contact lenses for him. (Pl.'s Stmt. Add'l Facts ¶ 36.) Ghosh approved the prescription and ordered the lenses, but plaintiff never received them. (*Id.* ¶¶ 37-40.)

On October 3, 2007, during a routine physical examination, plaintiff told Ghosh he had not received the lenses. (*Id.* ¶ 39.)

During the same visit, Ghosh performed a prostate exam on plaintiff "with way too much force, causing [him] to suffer pain . . . and have bleeding." (*Id.* ¶ 27.)

In this suit, plaintiff alleges that Ghosh, Aguinaldo and Wexford violated his Eighth Amendment rights by failing to treat the fungal infection and Ghosh and Wexford violated his rights by failing to treat his tooth, provide him with contact lenses and appropriately examine his prostate.

## Discussion

To prevail on a summary judgment motion, the movant must show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). At this stage, we do not weigh evidence or determine the truth of the matters asserted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). We view all evidence and draw all inferences in favor of the non-moving party. *Michas v. Health Cost Controls of Ill., Inc.*, 209 F.3d 687, 692 (7th Cir. 2000). Summary judgment is appropriate only when the record as a whole establishes that no reasonable jury could find for the non-moving party. *Id.*

### Exhaustion

The Prison Litigation Reform Act ("PLRA") requires inmates to exhaust available administrative remedies before filing a § 1983 suit. 42 U.S.C. § 1997e(a). "To exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). The IDOC grievance

procedure requires an inmate to: (1) seek relief through his counselor; (2) if issue is not resolved, submit a written grievance on the prison's grievance form to the grievance officer within sixty days after the complaint arises; and (3) if the grievance is denied, appeal the decision to the Administrative Review Board. *See* Ill. Admin. Code tit. 20, § 504.810-50. There is no evidence that plaintiff took any of these steps with respect to his vision and prostate exam claims, and the time for doing so has long since passed. Accordingly, the Court enters judgment for defendants on these claims.

**Remaining Claims**

Failing to provide medical treatment to an inmate violates the Eighth Amendment only if it constitutes deliberate indifference to a serious medical need. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). "An objectively serious medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Wynn v. Southward*, 251 F.3d 588, 593 (7th Cir. 2001) (quotations omitted). A defendant acted with deliberate indifference if "[he] was subjectively aware of the prisoner's serious medical needs and disregarded an excessive risk that a lack of treatment posed to the prisoner's health or safety from lack of treatment." *Id*.

There is no dispute that plaintiff developed Onychomycosis, a fungal infection, in two of his fingernails in late 2006. (Defs.' Resp. Pl.'s Stmt. Add'l Facts ¶ 29; *id.*, Ex. 4, 3/15/07 Offender Outpatient Progress Notes; *see* Pl.'s Stmt. Add'l Facts, Ex. 6, Clinite Aff., Ex. A at 2-3, 3/18/07 Infection Grievance.) Onychomycosis can cause nails to crumble and be painful, is difficult to treat and likely to recur, especially in people regularly exposed to water. Northwestern Memorial

Hospital, http://www.nmh.org/nm/1-001330 (last visited Jan. 14, 2010). Plaintiff, whose work assignment was dishwashing, said in his March 25, 2007 grievance that the infection was "causing severe disintegration and great pain of both nails." (Pl.'s Stmt. Add'l Facts, Ex. 6, Clinite Aff., Ex. A at 6, 3/25/07 Infection Grievance.) On July 10, 2007, when he appealed the denial of his grievances, plaintiff said the infection "ha[d] never healed . . . and only continues to get worse." (*Id.* at 10, 7/10/07 Appeal to Administrative Review Board) Given this evidence, the Court finds that the infection was a serious medical need for Eighth Amendment purposes. *See Wynn*, 251 F.3d at 593.

Construed in plaintiff's favor, however, the record does not suggest that Ghosh was deliberately indifferent to that need. Ghosh first learned about the infection when he did the emergency review of plaintiff's grievances on April 12, 2007.[3] (*See* Pl.'s Stmt. Add'l Facts, Ex. 6, Clinite Aff., Ex. A at 2-3, 6-7, 3/18/07 & 3/25/07 Infection Grievances.) On May 31, 2007, plaintiff's grievances were denied because of Aguinaldo's March 15, 2007 note in plaintiff's medical record that the infection was gone. (*Id.* at 9, Grievance Officer's Rep.) There is no evidence that plaintiff sought medical treatment or filed any grievances about the infection between May and July 2007, when the PA ordered more medication for him. There is also nothing to suggest that Ghosh knew plaintiff could not tolerate the medication the PA prescribed or that Wexford refused to provide him another one. In short, plaintiff has not raised a genuine issue of fact as to whether Ghosh knew of, and deliberately ignored, a substantial risk of harm to plaintiff.

---

[3]The fact that Ghosh did not treat the grievances as emergencies does not suggest deliberate indifference. A grievance is an emergency if it shows that "there is a substantial risk of imminent personal injury or other serious or irreparable harm to the offender." Ill. Admin. Code, tit. 20 § 504.840(a). Onychomycosis, as experienced by plaintiff, does not meet that description.

7

The same is true for Wexford. It is not clear whether a refusal to give medication based solely on its cost constitutes deliberate indifference, though one district court case suggests that it may. *See Wilson v. Vannatta*, 291 F. Supp. 2d 811, 816 (N.D. Ind. 2003) (denying a motion to dismiss a pro se prisoner's Eighth Amendment claim based on their alleged refusal to give him medication because "they could not afford the cost"). But even if it could, there is no evidence that Wexford's decision was based solely, or even partly, on cost. Thus, even if a cost-based decision could constitute deliberate indifference, an issue the Court does not decide, plaintiff has not raised a triable issue of fact as to whether Wexford made such a decision in this case.

Wexford is also entitled to summary judgment because plaintiff has not raised a triable fact issue as to the "color of state law" and personal involvement requirements of § 1983. 42 U.S.C. § 1983; *Iskander v. Vill. of Forest Park*, 690 F.2d 126, 128 (7th Cir. 1982) ("[J]ust as a municipal corporation is not vicariously liable upon a theory of respondeat superior for the constitutional torts of its employees, a private corporation is not vicariously liable under § 1983 for its employees' deprivations of others' civil rights." (citation omitted)). Plaintiff offers no evidence that suggests Wexford has a policy of refusing to provide necessary medication to inmates solely because of cost. Absent such evidence, plaintiff could not get to trial on this claim even if there were evidence that its decision was based only on cost.

The situation is different for Aguinaldo. On March 15, 2007, plaintiff says, Aguinaldo refused to give him treatment though he saw the fungus and knew that plaintiff had had it for months. (Pl.'s Stmt. Add'l Facts ¶¶ 30-32; *id.*, Ex. 2, Gevas Aff. ¶¶ 32-33; *id.*, Ex. 6, Clinite Aff., Ex. A at 2, 3/18/2007 Infection Grievance.) Moreover, plaintiff says, by the time he saw Aguinaldo his nails were crumbling and causing him significant pain. (*Id.*, Ex. 6, Clinite Aff., Ex. A at 2,

8

3/18/2007 Infection Grievance.) Therefore, this evidence is sufficient to raise a genuine issue as to whether Aguinaldo acted with deliberate indifference to plaintiff's serious medical need.

With respect to plaintiff's dental claim, the parties agree that an abscessed tooth is a serious medical need. (*See* Defs.' Resp. Pl.'s Stmt. Add'l Facts ¶¶ 8, 21.) Moreover, viewed favorably to plaintiff, the record suggests that: (1) after he finished the medication prescribed for his tooth in mid-February 2007, his abscess worsened or returned; (2) he filed emergency grievances seeking care for it on March 18, and 25, 2007; (3) IDOC policy classifies an "acute periapical abscess," as a dental emergency that requires an examination within one business day; (4) on April 27, 2007, Ghosh reviewed plaintiff's medical records, which showed that plaintiff had not had any dental treatment since January 30, 2007 but did not obtain care for him; (5) plaintiff's tooth was not extracted until June 5, 2007. (Pl.'s Resp. Defs.' LR 56.1(a) Stmt., Ex. 2, Gevas Aff. ¶¶ 2-22; *id.*, Ex. 3, IDOC Directive 04.03.102(II)(F)(7); *id.*, Ex. 5, Ghosh Dep. at 49-50, 55-56.) These facts are sufficient to create a genuine issue of fact as to whether Ghosh was deliberately indifferent to plaintiff's need for dental care.

Again, however, the result is different for Wexford. Plaintiff offers no evidence that suggests Wexford was involved in his dental treatment, let alone that it has a policy of refusing to provide such care to inmates. Thus, Wexford is entitled to judgment as a matter of law on this claim. *See Iskander*, 690 F.2d at 128.

**Conclusion**

For the reasons set forth above, there is no genuine issue of fact as to: (1) any of the claims plaintiff asserts against Wexford, which is entitled to judgment as a matter of law on them; and (2) the contact lens, prostate exam and fungal infection claims he asserts against Ghosh, who is entitled to judgment as a matter of law on them. Thus, the Court grants in part and denies in part defendants' summary judgment motion [doc. no. 149] and enters judgment in favor of these parties on these claims. The only remaining claims in this suit are: (1) the dental care claims against Ghosh, Borkowski and Henderson; and (2) the fungal infection claims against Borkowski and Aguinaldo. At the next status hearing, the Court will set a trial date.

**SO ORDERED.**   **ENTERED:**

**January 27, 2011**

*[signature: Ronald A. Guzman]*

**HON. RONALD A. GUZMAN**
**United States District Judge**