UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| David Gevas,<br>　　　　Plaintiff, | No. 08 CV 3074 |
| | Hon. Ronald A. Guzmán |
| v. | |
| Terry McCann, et al.,<br>　　　　Defendants. | |

# Memorandum Opinion and Order

**1.　Plaintiff's Motion to Bar Certain Evidence Regarding his 1993 Felony Convictions**

Plaintiff was convicted of two counts of murder in 1993 for which he is currently incarcerated. For our purposes, Federal Rule of Evidence ("Rule") 609 allows for the admission of prior convictions for the purpose of attacking the credibility of a witness if: (1) the conviction or the release of the witness from the confinement imposed for that conviction is not be more than 10 years old; or (2) the conviction was for a crime involving dishonesty or false statement, then it may be admitted against any witness. A prior conviction for any other type of crime (*i.e.,* not involving dishonesty or false statement) may be admitted if the crime was punishable by death or imprisonment in excess of one year and its probative value is not substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

Plaintiff's conviction meets the first requirement as it is less than 10 years since he was released from incarceration. It does not meet the second requirements because it is not a conviction for dishonesty or false statement. Therefore, to be admissible, it must be for a crime that was punishable by death or imprisonment in excess of one year and its probative value is not substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay waste of time, or needless presentation of cumulative of evidence. Murder is a crime punishable by more than one year imprisonment. In determining whether the prior conviction's probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence, the Court finds that

while the impeachment value of the prior conviction is not great, it is not negligible. Plaintiff's prior conviction is for a crime of violence that does not involve an element of dishonesty *per se*. However, his conviction for murder does reflect a lack of respect for society's rules and norms and a factfinder could infer that such a person is, at least, more likely to break other societal standards, such as lying under oath, than a person who has throughout his life adhered to society's basic rules. Although the conviction was twenty-one years ago, the plaintiff has been incarcerated during that entire period and, thus, no evidence of rehabilitation or a change in lifestyle or character that would diminish the probative value of the prior conviction has been presented to the Court.

The conviction was for actions totally unrelated to this civil matter and, therefore, the likelihood of prejudice in the sense that the jury might be led to believe that the plaintiff had a propensity to act in a certain manner is nonexistent. This trial revolves around the credibility of occurrence witnesses, most of whom are parties to the case. What each of these parties/witnesses said or did will determine the issue of deliberate indifference. They most likely will all testify and present contradictory versions of the events at issue. Thus, the jury is entitled to have as much information as possible in order to evaluate the truthfulness of all of the witnesses. Furthermore, it is necessary to the plaintiff's cause of action to establish that he was incarcerated at the time of the events in question. Given the conflicting considerations in this case, the Court rules that the jury may be told that the plaintiff has been convicted of a felony and was a resident of the Illinois Department of Corrections ("IDOC") during the timeframe of the alleged deliberate indifference claim.

The plaintiff is authorized to wear street clothes during the trial so long as the clothes and the manner in which they are provided to him comply with the rules and regulations of the United States Marshal's Office. With respect to the issue of restraints, the Court will consult with the Marshal's Office and the guards from IDOC regarding the relevant risks and will issue a ruling after doing so.

2.  **Plaintiff's Motion to Bar Any Reference to his Last Name**

Because his conviction in 1996 for murdering his infant children was publicized and can be referenced on the Internet, the plaintiff seeks to bar the use of his last name during the course of the trial. In other words, the plaintiff wishes to remain anonymous to the jury. Such an order is almost completely unworkable as it would require redaction of virtually all of the prison and medical/dental records and other relevant documents in the case and admonishing all witnesses against using the plaintiff's last name. As to the latter, not only would such a request likely be unsuccessful, it could easily lead to confused and stilted testimony. The Court is aware of no precedent for such an order, and the plaintiff has cited none. Generally speaking, the Constitution requires that Court proceedings remain open to the public, which includes the public's right to know the identity of the litigants. Moreover, given the length of time since the events that led to the plaintiff's conviction, it is doubtful that any potential juror will recall the plaintiff or the facts surrounding his case, but that determination can be made during *voir dire*. With respect to the possibility that the jurors will investigate the facts and circumstances of this

case on their own, this concern arises in every case and is adequately dealt with by appropriate instructions to the jury prohibiting them from performing any outside research or investigation. Therefore, the motion is denied.

3. **Plaintiff's Motion to Bar Any Reference to the Prior Trial or Verdict**

The Court agrees with the general proposition that evidence of the prior trial is irrelevant to the issues in this trial. However, the defendants assert that to the extent that the jury in the prior trial resolved a particular issue of fact, collateral estoppel may bar the plaintiff from retrying this same issue. In particular, defendant Selmer argues that the plaintiff should be collaterally estopped from claiming that Henderson refused to let him out of his cell to attend the March 28, 2007 dental appointment. For collateral estoppel to apply to preclude the litigation of an issue, the previous litigation must meet the following four requirements: (1) the issue must be the same as the issue in the present litigation; (2) the issue must have been actually litigated; (3) the issue must have been essential to the final judgment; and (4) the party who is precluded from litigating the issue must have been fully represented in the prior action. *Life Plans, Inc. v. ING U.S., Inc.*, 13 C 7864, 2014 WL 2118748, at *2 (N.D. Ill. May 21, 2014)

Defendant's bid to estop the plaintiff from presenting evidence that prevented him from attending the March 28, 2007 dental appointment fails at step one. The verdict for Henderson in the prior trial does not establish that he did not prevent the plaintiff from attending the March 28, 2007 dental appointment. The jury in the prior trial was told that in order to find that Henderson was deliberately indifferent, it would have to conclude that Henderson actually knew that plaintiff's dental condition posed a substantial risk of serious harm and that he consciously disregarded that risk by failing to take reasonable measures to deal with it. The jury could, therefore, have based its ruling in favor of Henderson on a finding that the plaintiff did not have a serious medical need, or that Henderson was not aware that the plaintiff's dental condition posed a substantial risk of serious harm to plaintiff's health. In that case, the jury may not even have reached the question of whether Henderson barred plaintiff from attending his dental appointment - the only factual determination relevant to this trial - or if he did, the jury could have found he did so without the requisite knowledge of the severity of plaintiff's condition. Because the basis for the jury's decision to exonerate Henderson is unknown, the Court cannot conclude that the relevant factual issue has been previously decided. Therefore, the plaintiff's motion to bar evidence of Henderson's acts which allegedly prevented plaintiff from attending the March 28, 2007 dental appointment is denied.

4. **Plaintiff's Motion to Bar Reference to Other Cases He Has Filed**

The plaintiff seeks to preclude the defendants from introducing evidence of other cases he has brought. The Court can think of no relevance for such evidence and therefore grants the motion to bar unless the defendants can show relevance. If they do so, the Court will undertake an analysis under Rule 403 to determine if the probative value of the evidence of the prior cases is substantially outweighed by the danger of

unfairly prejudicing the plaintiff by exposing him to the possibility that the jury will believe he is a chronic litigant who files baseless claims.

The defendants indicate they may seek to introduce evidence of the jury verdict in favor of Officer Henderson in this case. As we have previously discussed, we do not believe that the previous verdict in favor of Henderson constitutes collateral estoppel on the issue of his actions on March 28, 2007, nor can the Court conceive of any other relevant reason to bring before the jury the fact of plaintiff's many prior lawsuits.

**5.     Defendant Selmer's Motion to Bar Evidence or Argument That Plaintiff Should Have Received or Been Offered Root Canal Therapy Rather Than Tooth Extraction**

Plaintiff is entitled to appropriate medical treatment for any serious medical need or condition, but he is not entitled to his preferred treatment. *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997); *Ciarpaglini v. Saini*, 352 F.3d 328, 331 (7th Cir. 2003). What the appropriate or indicated medical treatment consists of in any given situation is, in most situations, established through expert testimony. Therefore, if there is a question as to whether the plaintiff was offered appropriate medical treatment, as opposed to the timing of such treatment, then that would be an issue for the jury to decide after hearing appropriate expert testimony. However, before argument can be made on any issue, there must be some evidence upon which to base the argument and the Court's review of the record indicates that plaintiff's own expert will not opine that root canal therapy was the only appropriate or indicated treatment. On the contrary, both experts seem to be of the opinion that either extraction or root canal would have been the appropriate/indicated treatment for the plaintiff's condition. Therefore, if indeed there is no evidence to indicate otherwise, the plaintiff may not argue that forcing him to undergo extraction rather than allowing him to choose root canal therapy constitutes deliberate indifference to a serious medical need.

Nevertheless, the fact that the plaintiff preferred a root canal and refused extraction may be relevant to show that there was no failure to offer him an appropriate treatment or as circumstantial evidence that the pain he suffered was self-induced. IDOC regulations which imply that root canal treatment was available to inmates in addition to extraction, however, would not be relevant. The issue is not whether the treatment was available according to IDOC regulations, but whether the plaintiff believed it was and refused extraction because of that belief. Furthermore, actual evidence of IDOC regulations which imply that root canal treatment was available is likely to confuse the jury and may lead jurors to believe that what IDOC regulations allowed is what plaintiff was constitutionally entitled to or what the standard of care required. Neither of these conclusions is accurate.

6. **Defendant Selmer's Motion to Bar Testimony Regarding Defendant's Liability Insurance**

This motion is granted without objection.

7. **Defendant Selmer's to Exclude Witnesses**

This motion is joined in by plaintiff and granted without objection.

8. **Defendant Selmer's Motion to Disqualify Defendants as Expert Witnesses**

Dr. Selmer moves pursuant to Federal Rules of Evidence 702, 703 or 705 for an order barring plaintiff's counsel from introducing undisclosed expert testimony. He Selmer anticipates that plaintiff's counsel will call him to the witness stand and ask him questions concerning conditions depicted in certain radiographs, the proper treatment for such conditions, and the standard of care. Answering these questions necessarily requires scientific, technical, or otherwise specialized knowledge, and thus is expert testimony subject to Federal Rule of Civil Procedure 26(a)(2). That Rule requires that *all* witnesses who are to give expert testimony be disclosed, though only witnesses retained or specially employed to provide expert testimony are required to submit an expert report. The Court granted this motion, limited the questioning of Dr. Selmer to his activities in treating the plaintiff and his explanation for his actions, and precluded him from giving expert opinions based upon hypothetical questions or prognoses. However, upon reconsideration, it appears that a plenary examination of Dr. Selmer is appropriate.

Dr. Selmer will be called as a witness not only because he was plaintiff's treating dentist but also because he is a defendant in this case. As a defendant, his subjective state of mind regarding plaintiff's condition is highly relevant. To prevail on his claim against Dr. Selmer, plaintiff must show that Dr. Selmer actually knew of a substantial risk of serious harm that the dental condition posed to plaintiff's health and consciously disregarded that risk by failing to take reasonable measures to deal with it. Thus, Dr. Selmer's expertise, knowledge and the conclusions he derived from them are a critical element of plaintiff's case. Unlike other cases involving in which treating doctors or hired experts provide testimony, Dr. Selmer's personal knowledge and belief are at issue in this case. Plaintiff should, therefore, be allowed to question him regarding his state of mind, including his opinions, diagnoses and prognoses as they relate to plaintiff's condition.

Furthermore, the disclosure requirement of Rule 26(a)(2) is designed to prevent surprise and prejudice to the party against whom the expert will testify. Armed with knowledge of the expert opinions plaintiff will introduce, a defendant can prepare his defense, and if necessary, obtain rebuttal expert testimony. Clearly, that analysis does not apply in this case. Dr. Selmer and Dr. Mitchell will not surprise themselves with their own opinion testimony, do not need disclosure to properly cross-examine themselves nor would have sought another expert to rebut their own opinions. Thus, there is no prejudice to Dr. Selmer in allowing him to provide expert testimony or to Dr. Mitchell in allowing her to provide expert testimony.

It is possible, however, that Dr. Mitchell's opinion testimony may surprise and prejudice Dr. Selmer and vice versa. Therefore, the Court will consider an appropriate instruction to the jury to the effect that opinion testimony given by each of the defendants may be considered only as to that defendant and not the other.

**9.    Defendant Selmer's Motion to Bar Plaintiff from Introducing Evidence of IDOC Administrative Directives or Wexford Policies**

IDOC's and Wexford's policies, directives, rules and regulations do not establish the standard of care in a medical malpractice case. *See Moss v. Miller*, 625 N.E.2d 1044, 1051 (Ill. App. Ct. 1994) (stating that the standard of care for practitioners in a penitentiary is the same as the standard of care for those practicing in the community). However, such rules and regulations have been allowed in evidence to help jurors decide what was feasible, what the defendant knew or should have known and help them understand expert testimony regarding the standard of care. But because such regulations do not, by themselves, establish the standard of care, using them here must be done with caution, as the jury is already faced with the task of differentiating between negligence and deliberate indifference. To establish the latter, plaintiff must show not only a violation of the standard of care, but that the defendant was deliberately, subjectively, indifferent to plaintiff's medical needs. Regulations regarding available or allowable medical procedures, as opposed to purely administrative rules regarding bookkeeping and scheduling, are the most likely to cause confusion.[1] Further, the regulations at issue here, which state that state root canal therapy is available to prisoners under certain circumstances, are largely irrelevant. Given that all of the experts agree that the standard of care was to provide *either* a root canal or an extraction, knowing whether the former procedure was available will not aid the jury in determining either the malpractice or the deliberate indifference claim. Accordingly, the motion to exclude is granted as to the rules and regulations regarding the availability of root canal treatment for prisoners.

On the other hand, rules and regulations regarding scheduling of appointments are likely to help the jury determine what actually happened, the parties' duties and responsibilities to each other, and the resources that were available. While not conclusive on these issues, the parties can present actual testimony to support or rebut the picture painted by them, IDOC and Wexford's rules and regulations are admissible as circumstantial evidence of what the custom and practice of the dental department or clinic actually was.

---

[1] In a different context, agency and department regulations have been found to be inadmissible because of the likelihood of confusing the jury. *Thompson v. City of Chi.*, 472 F.3d 444 (7th Cir. 2006) (police department's general order regarding use of force was not relevant to the issue of whether police officer violated suspect's Fourth Amendment rights by using excessive force in apprehending him, for purposes of § 1983 claim brought by survivors of suspect who died during his arrest).

10. **Defendant Selmer's Motion to Bar Testimony as to his Responsibility for the Action of Others**

This motion is denied. Whether such an argument can be made will depend upon the facts adduced during the course of the trial. Physicians are sometimes held vicariously liable for the negligent acts of other physicians. A physician who employs another may be held vicariously liable for the physician-employee's negligent acts committed while acting in the scope of employment. Physicians who are employed together, who diagnose and treat a patient together, without withdrawal by or discharge of either, may both be responsible if the treatment is negligent. *Steinberg v. Dunseth*, 631 N.E.2d 809, 810-11 (Ill. App. Ct. 1994). Concert of action theory in medical malpractice cases was recognized to exist in *Reed v. Bascon,* 124 Ill.2d 386 (1988). In that case, the Illinois Supreme Court implied that there must be actual evidence of control between or among those treating the patient. But any such argument must be based upon evidence that would establish such responsibility or, at least evidence from which a reasonable inference of such could be drawn. A case in which no doctor controlled the actions of the physician who followed him or her, and in which subsequent physicians had no control over the initial physician's actions would not support such an argument.

11. **Defendant Mitchell's Motion to Bar Plaintiff from Testifying Concerning Matters of Medical Opinion**

This motion is granted. Plaintiff is not qualified to testify as to matters of medical opinion. He can, of course, relate what he experienced and observed in terms of symptoms and sensations.

12. **Defendant Mitchell's Motion to Preclude Reference to Other Lawsuits**

This motion is granted without objection.

13. **Defendant Mitchell's Motion to Bar Witnesses from Courtroom.**

This motion is granted without objection as to all parties.

14. **Defendant Mitchell's Motion to Bar Evidence of Indemnification of the Defendant by the State of Illinois**.

This motion is granted without objection.

15. **Defendant Mitchell's Motion to Bar Evidence Regarding Count II of Plaintiff's 4th Amended Complaint.**

This motion is denied as it would constitute a summary judgment and dismissal of Count II.

**16.   Defendant Mitchell's Motion to Bar Evidence that Dr. Mitchell Violated Plaintiff's Constitutional Rights.**

This motion is denied as it would constitute a summary judgment and dismissal of Count I.

**17.   Defendant Mitchell's Motion to Bar Evidence or Testimony Regarding her Original Answers to Plaintiff's Requests to Admit.**

This motion is denied. By allowing the defendant to withdraw her responses to requests to admit numbers 2, 3, 4, 5, and 82, the Court relieved Dr. Mitchell of what would otherwise have been judicial admissions, *i.e*, incontrovertible admissions of facts. *See Help At Home Inc. v. Med. Capital, L.L.C*, 260 F.3d 748 (7th Cir. 1998) (Rule 36 admissions, like pleadings, are conclusive and may not be controverted at trial.). However, even superseded pleadings may be offered as evidence - evidentiary admissions. *DePaepe v. Gen. Motors Corp.*, 141 F.3d 715, 719 (7th Cir. 1998). The Rule 36 admissions may be offered in evidence in the same manner and under the same conditions as any other party admission pursuant to Federal Rule of Evidence 801(d)(2). As such, the defendant is free to attempt to rebut or otherwise dilute the probative value of his prior admission and plaintiff is free to assert its importance as with any other item of evidence.

**18.   Defendant Selmer's Motion to Bar any Reference to Defendant's Request Book.**

This motion is granted by agreement of all the parties.

Dated: June 27, 2014

**SO ORDERED**                                    **ENTER:**

*Ronald A. Guzmán*
-----------------------------------------
**RONALD A. GUZMÁN**
**District Judge**